**In re Anonymous No. 2 D.B. 77**

Disciplinary Board Docket no. 2 D.B. 77.

### FINDINGS AND OPINION
### OF HEARING COMMITTEE

The petition for discipline in this proceeding was filed on January 7, 1977. Respondent filed an answer on February 23, 1977. The matter was referred for hearing to hearing committee [   ].

Hearings were held on April 12, May 3 and May 10, 1977. Disciplinary counsel filed its brief and proposed findings on July 6, 1977. Respondent filed his brief and proposed findings on July 26, 1977. Disciplinary counsel indicated on July 29 that he did not desire to file a reply brief.

## FINDINGS OF FACT

1. Respondent is an attorney licensed to practice law in the Commonwealth of Pennsylvania and his office is located in [ ], Pa. (Stipulation)

2. Respondent was at all times relevant hereto attorney for [A Corp.] (Stipulation)

3. On or about December 23, 1970, respondent filed a petition on behalf of [A Corp.] for an arrangement under chapter XI of the Bankruptcy Act in the United States District Court for the Eastern District of Pennsylvania, Bankruptcy Division ("Bankruptcy Court"). (Stipulation)

4. On or about December 23, 1970, said petition was referred to Honorable [B] ("Judge [B]"), referee in bankruptcy, who acted in this matter until his retirement in [ ]. (Stipulation)

5. On or about January 31, 1972, respondent filed on behalf of [A Corp.] a proposed plan in bankruptcy court. (Stipulation)

6. On or about March 9, 1972, after a hearing in bankruptcy court on the plan, a majority of unsecured creditors accepted the plan and by an order dated March 9, 1972, Judge [B] directed that moneys necessary to fund the plan be deposited with counsel for the receiver on or before April 7, 1972, and that if said moneys were not deposited, [A Corp.] would agree to an adjudication of bankrupt. (Stipulation)

7. By orders dated April 7, 1972, May 8, 1972, and June 13, 1972, Judge [B] granted [A Corp.] additional time to make the necessary deposits to fund the plan. (Stipulation)

8. In or about July of 1972, respondent communicated with [C], the owner of [D], Inc., successor to the [E Co.], in an effort to have [D, Inc.] fund

the plan and to prevent the adjudication of [A Corp.] as bankrupt. (N.T. 178)

9. In the July, 1972, meeting, respondent proposed to [C] to fund the plan in consideration for the issuance to [D, Inc.] of 80 percent of the total stock issued and authorized of [A Corp.]. [C] agreed on behalf of [D, Inc.] to fund the plan for an amount not to exceed $40,000. In addition, [C] stated that the [ ] claim against [A Corp.] would have to be resolved in such a manner as to not exceed the $40,000 cost that [D, Inc.] was willing to pay. (N.T. 179-181)

10. At this same meeting, respondent requested that [D, Inc.] deliver to him (respondent) as legal counsel to [A Corp.], $10,000 to be deposited with the bankruptcy court as evidence to the court that a good faith effort was being made to fund the plan and to prevent the adjudication of [A Corp.] as bankrupt. (N.T. 182-183)

11. At this same meeting, again in the presence of [F and C] respondent agreed that if [D, Inc.] decided to go forward with its proposed acquisition respondent's demand for a $10,000 fee would be met, provided the stated conditions were successfully negotiated. (N.T. [F], 120; respondent, 388)

12. Pursuant to the July, 1972, meeting, [G] prepared two drafts of [D, Inc.'s] proposed agreement to fund the plan. (N.T. 23-24, 186 and P.2)

13. Pursuant to the first draft of P-2, [C] requested a check from [D, Inc.] to be made payable to [respondent], attorney for [A Corp.]. Said check was received by [G] and delivered to respondent with the first draft of P-2. (N.T. 31-32, 65, 107, 187-188 and P-3)

14. Upon receipt of [D, Inc.'s] check dated August 8, 1972, for $10,000 made payable to [re-

spondent] attorney for [A] Corporation, respondent deposited said check in his escrow account at [ ] bank, Account Number [ ]. (Stipulation)

15. As a result of learning that [A Corp.] had a dispute with [H] corporation over [H's] status as a secured creditor, [D, Inc.] withdrew its offer to fund the plan by letter dated August 22, 1972. (N.T. 34-35, 191 and P-4)

16. Said letter was addressed to respondent and advised respondent that the offer to fund the plan was withdrawn and demanded the return of the $10,000 deposit. (N.T. 35-36, 191-192 and P-4)

17. Said letter was mailed to respondent on or about August 22, 1972. (N.T. 35 and 192)

18. Within a few days of August 22, 1972, [I] received a copy in the mail of the August 22, 1972, letter to respondent. (N.T. 240-241)

19. In anticipation of a public offering of stock which [D, Inc.] was going to make, [I] telephoned respondent in early November 1972 and made a second demand on respondent for the return of the $10,000 deposit. (N.T. 242-243)

20. [I] requested the return of the check for SEC purposes only (N.T. [I], 276), as a symbol of termination (N.T. [I], 303); and stated he did not intend to use the money. (N.T. respondent, 391)

21. Respondent refused to return the check until he had had an opportunity to contact [C] (N.T. [I], 243; respondent, 391), who again assured respondent that the check would not be used. (N.T. respondent, 391)

22. Respondent agreed to return the check for the stated limited purpose, having advised [I] not to deposit it as it would not be honored. (N.T. [C], 195; respondent, 391)

23. [I] nevertheless caused respondent's check dated November 14, 1972, in the amount of $10,000 to be deposited (N.T. [I], 243), which check was returned several days later by the bank. (N.T. [I], 243-244)

24. As soon as respondent learned of [I's] attempt to deposit the check, respondent contacted [C], who directed respondent to continue his efforts in closing the matter. (N.T. respondent, 393)

25. Following this conversation, respondent thereafter received no calls, letters or other communications regarding the $10,000 until April 6, 1973. (N.T. [G], 36-37; respondent, 393)

26. During this period, respondent continued to negotiate with [J, G], and all relevant parties in an attempt to successfully fund the plan. (N.T. [G], 36-37; [C], 195-196; [J], 343; respondent, 393-394)

27. In this regard, notwithstanding the request for the return of the check in early November 1972, and notwithstanding petitioner's witnesses' testimony that they had withdrawn their offer (N.T. [G], 104; [C], 195; [I], 249), [I] and [G] participated in a negotiation session along with all other relevant parties in respondent's office on November 17, 1972. (N.T. [I], 251, 304). The purpose of the meeting was to gain [K's] cooperation and to have [H Corp.] relinquish its position of being a secured creditor of [A Corp.] (N.T. [I], 251; respondent, 389-390). The resolution of these problems were two of the conditions originally set by [C] and respondent at their initial meeting in July 1972. (N.T. [C], 190-191)

28. On April 6, 1973. [G] sent a letter to respondent requesting the return of the $10,000. (N.T. [G], 46; P-6) Upon receipt of this letter, respondent

called [C] and questioned the letter's intent. [C] advised respondent to ignore it and continue in his efforts to terminate the matter. (N.T. respondent, 395)

## DISCUSSION

Petitioner sought to establish in this hearing that respondent had obtained $10,000 by falsely representing that he needed the money to convince the bankruptcy court that [D, Inc.] was willing to fund the plan and, therefore, [A Corp.] should not be adjudicated bankrupt. He further sought to establish that respondent refused to pay over $10,000, despite demands by [A's] representatives to do so.

The hearing committee does not believe that petitioner has met its burden of proof, whatever that burden may be under the applicable law, to prove the allegations of the complaint.

The committee echoes the pejorative comments made by both counsel in this proceeding with respect to the unlawyerlike, careless fashion in which the underlying transaction was conducted which gave rise to the charges. The fact that one of the parties to the transaction involved is a lawyer may shed some, but not a great deal of light on the informality of the documentation. At any rate, the inadequate record of events recited in this proceeding requires the hearing committee to be even more clairvoyant than is usually required in the conduct of its business to understand or even surmise what actually did transpire between the parties.

We credit the testimony of petitioner's witnesses that [D, Inc.] agreed to pay a fee to respondent if he was able to bring to fruition the acquisition of [A Corp.] by [D, Inc.]. (N.T. 15, 21, 184-185)

Respondent testified in some detail about the money problems incident to this acquisition. We do not believe [C] agreed unequivocally to pay a fee of $10,000 in the face of these difficulties. Given these circumstances, we believe that [C's] agreement to pay a fee to respondent was contingent upon a successful venture.

Consistent with this interpretation of the reference to respondent as an escrow agent on [D's] $10,000 check (P-2), respondent deposited this check in an account identified as an escrow account. Further evidence that the transaction was so structured at its inception was the treatment by respondent of the check as a deposit on account and not as a fee. Respondent's statement that he treated this escrow account as a convenience account simply does not ring true.

On the other hand, disciplinary counsel's contention that the money was to be used as a deposit and for no other purposes is not credible in view of the subsequent dealings between the parties. Following a demand for return of the check on August 22, no action was taken by [D, Inc.] to pursue the matter to a conclusion. We find that the failure to return the money was accepted by [D, Inc.]. This finding is supported by the circumstances surrounding the return of the $10,000 check by respondent following a telephone communication with [I] in November. Although the parties do not agree precisely on the [I]-respondent conversation, there is no dispute that [I] stated that the return of the check was necessary for SEC purposes (presumably, although not so stated directly by any witness) to clean up the balance sheet. (N.T. 243, 276)

We credit respondent's testimony that he failed to deliver the check until he had a conversation with

[C] who assured him that the check would not be deposited. (N.T. 391) We cannot credit respondent's testimony that the check was returned marked improperly as "Insufficient Funds," but rather find that the account did not have sufficient funds to cover the check. (P-5A, paragraph 9 of stipulation and N.T. 243-244) In the circumstances of this particular proceeding, however, we do not deem this fact legally significant. In view of [D, Inc.'s] inaction, non-payment was satisfactory to [D, Inc.], for whatever the reason.

We find, consistent with the [D] effort to meet SEC account requirements, that [C] assured respondent that he would be compensated for his efforts. No other view of the facts is consistent with respondent's willingness to provide a $10,000 check, in view of what we believe to be the actual understanding between respondent and [C].

Consistent with these interpretations of the evidence, we credit respondent's testimony that negotiations were continued by respondent on behalf of [D, Inc.], looking toward the ultimate acquisition of [A Corp.]. Petitioner concedes that these negotiations (which it identifies as discussions) continued but argues that they did so because of [D Inc.'s] concern for relations with [   ] and [I's] concern that if [A Corp.] was adjudicated bankrupt, [   ] would suffer a financial loss. For whatever the reason, these discussions on negotiations did go forward with respondent's participation and with [D Inc.'s] approval.

The committee finds from the evidence that [G's] role was purely mechanical; that [C] was a central figure and that he has not been candid in his testimony before the committee with respect to all his

dealings with respondent. There is no basis in experience or logic to explain the rendition of services by respondent subsequent to August 1972 in the absence of an agreement by [C] to pay respondent a fee. Both respondent and [C] have been members of the bar for many years and had previous dealings with each other. The only explanation consistent with the events recited is the existence of an understanding between them which contemplated that a fee be paid.

The committee finds that the letter from [G] to respondent on April 1975, and all the events thereafter are self-serving in the extreme on both sides and do not shed light on the central issues of the case. The letters back and forth between respondent and [G] do, however, serve to reinforce our conclusion that the evidence in this proceeding suggest that a dispute arose between two lawyers engaged in a business transaction which ultimately failed and a fee dispute developed, rather than the clear-cut case of improper conduct which disciplinary counsel alleged.

## CONCLUSION

The hearing committee finds that petitioner has failed to meet its burden of proof that respondent should be disciplined in this proceeding.

## CONCURRING OPINION OF HEARING COMMITTEE MEMBER

I believe that respondent acted improperly in forwarding his check for $10,000 in November 1972 to [D, Inc.] when he concedes that he did not have sufficient funds in his account to cover it.

While it may be that he did so with the assurance of [C], it is obvious that the effect was to mislead either the accountants or the SEC lawyers for [D, Inc.] into believing that the [A Corp.] negotiations had been terminated and that there was no longer any obligation by [D, Inc.] to fund respondent's fee.

However, I am persuaded that the petition for discipline was not adequately directed at this action by respondent and I, therefore, concur in the foregoing opinion.

## ORDER BY DISCIPLINARY BOARD

This will advise that the disciplinary board at an executive session held on May 12, 1978, affirmed the recommendation of the hearing committee that the above proceeding be dismissed. The Office of Disciplinary Counsel is requested to take appropriate action to reflect this decision.